# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE HOLMES, et al., | 1:06-cv-01527-SMS |
| Plaintiffs, | ORDER DENYING MOTIONS OF DEFENDANTS HOME DEPOT USA, INC., AND WALBRO CORPORATION FOR SUMMARY JUDGMENT (DOCS. 96, 101) |
| v. | |
| HOME DEPOT USA, INC., et al., | |
| Defendants. | |

Plaintiffs are proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301. Pending before the Court are the motions of Defendants Home Depot USA, Inc., and Walbro Corporation for summary judgment.

I. Background

A. The Pleadings

This is an action for damages for injuries sustained by Plaintiffs Vernon and Alice Holmes on August 7, 2005, when a lawnmower purchased by Plaintiffs from Defendant Home Depot caught fire during its operation due to a failure or malfunction, including but not limited to a malfunction of the

1  carburetor/exhaust manifold. (Second Amended Complaint (SAC)

2  filed July 22, 2008, p. 4.) Plaintiff alleges that Defendants

3  Home Depot USA, Inc., Briggs & Stratton Corporation, Walbro

4  Corporation, MTD Products, DAPCO Industries, and E. I. Du Pont de

5  Nemours and Company (Du Pont),[1] negligently designed,

6  manufactured, distributed, sold, maintained, inspected, repaired,

7  and built an MTD riding lawnmower; and they failed to warn

8  Plaintiffs of known dangers associated with the lawnmower,

9  including a defective carburetor/exhaust manifold, which broke

10 and caused a fire. (SAC pp. 1-5.) In a second claim, Plaintiff

11 alleges that Defendants are liable on a theory of products

12 liability, in that Plaintiffs, who are purchasers, users, and

13 bystanders, were injured by the product, which was defective, and

14 was being used in the manner intended by the defendants, who

15 manufactured, designed, and sold the product, and whose express

16 and implied warranties were breached. (Id. p. 6.)

17     Defendant Home Depot answered on September 22, 2006;

18 Defendant Walbro Engine Management, LLC (Walbro) filed a second

19 amended answer on January 17, 2008.

20         B. Facts

21     It is undisputed that Plaintiffs Vernon Holmes and Alice

22 Holmes, husband and wife, were injured in a fire on their

23 property in Coulterville, California, on August 7, 2005, when the

24 lawnmower manufactured and distributed by Defendants was being

25 operated by Vernon.

26     Vernon was the only person present when the fire began; he

27

28

[1] Plaintiffs have separately moved to dismiss Defendant Du Pont.

had ridden the mower for about an hour and one-half when he began to back up the mower by shifting into reverse; the mower died, and when Plaintiff turned to the front again, he saw flames coming from under the hood and the left front of the mower; he heard grass burning. Plaintiff experienced no stalls, heard no backfire, perceived no striking of rocks, and saw no sparks or fire exit the exhaust. (Dep. Vernon Holmes pp. 13, 442, 444-45, 450-51, 460, 124, 127, 94.) The property was covered in grass that was seven to nine inches high and was green and brown; it was also full of rocks and scrap metal. Vernon knew that there was fire danger in the summer and that there was a danger of hitting a rock with the blade and causing a fire. (Id. pp. 432, 442-43, 215, 345.) Plaintiff knew that the mower was involved in the fire and generally caused the fire, but he did not have information about the specific cause of the fire, and he never inspected the mower after the fire. (Id. at pp. 127, 404, 467.)

### C. Defendant Home Depot's Motion

Defendant Home Depot filed a motion for summary judgment on September 17, 2008, along with a memorandum of points and authorities, separate statement of undisputed material facts, and declaration of Tom Prountzos with exhibits.

Plaintiffs filed opposition to the motion on November 4, 2008, including a memorandum, response to statement of undisputed facts, separate statement of undisputed material facts, and evidentiary objections, along with the declarations of Warren R. Paboojian and Alex Wong with attachments.

Defendant Home Depot filed a reply on November 14, 2008, including a memorandum, objections to Plaintiff's evidence

3

1 submitted in opposition to the motion, and a response to
2 Plaintiff's separate statement of undisputed material facts.

3         D. <u>Defendant Walbro's Motion</u>

4     The motion of Defendant Walbro is identical with Home
5 Depot's motion in all significant respects.

6     Defendant Walbro filed a motion for summary judgment on
7 October 8, 2008, along with a memorandum of points and
8 authorities, separate statement of undisputed material facts, and
9 declaration of Mark B. Busick with exhibits.

10     Plaintiffs filed opposition to the motion on November 4,
11 2008, including a memorandum, response to statement of undisputed
12 facts, separate statement of undisputed material facts, and
13 evidentiary objections, along with the declarations of Warren R.
14 Paboojian and Alex Wong with attachments.

15     Defendant Walbro filed a notice of non-receipt of opposition
16 on November 14, 2008, and indicated that as a consequence it did
17 not intend to file a reply. Plaintiffs filed on the same date, in
18 response to the Defendant's notice, declarations of their
19 counsel, Warren R. Paboojian and Jason Bell, and of their legal
20 secretary, Richelle Patton,[2] and a notice of errata. These papers
21 reflect discovery of a mistake on the part of counsel's staff, to
22 wit, the mistaken duplicative filing and electronic service of
23 two oppositions to Defendant Home Depot's motion instead of
24 filing an opposition to each motion. The declarations indicated
25 that Mr. Mark B. Busick, counsel for Walbro, suffered no
26 prejudice from the mistake because the oppositions to both

27 ─────────────────────

28     [2] The declaration states that Jason Bell is the legal secretary, but the title and signature of the document reflect that it is the declaration of

1  motions were identical; Mr. Busick desired to maintain the
2  current hearing date and would file a reply forthwith.

3     On November 17, 2008, Defendant Walbro filed a reply to the
4  opposition, including a memorandum, objections to Plaintiff's
5  evidence submitted in opposition to the motion, a response to
6  Plaintiff's separate statement of undisputed material facts in
7  opposition to the motion, and a declaration of Mark B. Busick
8  with exhibits.

9     By separate order, the hearing on the motions has been
10 vacated, and the matters have been deemed submitted to the Court
11 for decision.

12    II. <u>Legal Standards</u>

13    Summary judgment is appropriate when it is demonstrated that
14 there exists no genuine issue as to any material fact, and that
15 the moving party is entitled to judgment as a matter of law.
16 Fed. R. Civ. P. 56(c). Under summary judgment practice, the
17 moving party

18            [A]lways bears the initial responsibility of
             informing the district court of the basis for
19           its motion, and identifying those portions of
             "the pleadings, depositions, answers to
20           interrogatories, and admissions on file,
             together with the affidavits, if any," which
21           it believes demonstrate the absence of a
             genuine issue of material fact.
22
   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). It is the
23
   moving party's burden to establish that there exists no genuine
24
   issue of material fact and that the moving party is entitled to
25
   judgment as a matter of law. <u>British Airways Board v. Boeing Co.</u>,
26
   585 F.2d 946, 951 (9th Cir. 1978).
27
28    Where a party with the ultimate burden of persuasion at

trial as to a matter moves for summary judgment, it must demonstrate affirmatively by evidence each essential element of its claim or affirmative defense and must establish that there is no triable issue of fact as to each essential element such that a rational trier of fact could render a judgment in its favor. Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003). If a party moves for summary judgment with respect to a matter as to which the opposing party has the ultimate burden of persuasion at trial, then the moving party must show that the opposing party cannot meet its burden of proof at trial by establishing that there is no genuine issue of material fact as to an essential element of the opposing party's claim or defense; the moving party must meet the initial burden of producing evidence or showing an absence of evidence as well as the ultimate burden of persuasion. Nissan Fire Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the opposing party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990)). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. Id.

However, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

depositions, answers to interrogatories, and admissions on file."
Celotex Corp. v. Catrett, 477 U.S. 317, 323. Indeed, summary
judgment should be entered, after adequate time for discovery and
upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial. Id. "[A] complete failure of proof concerning
an essential element of the nonmoving party's case necessarily
renders all other facts immaterial." Id. In such a circumstance,
summary judgment should be granted, "so long as whatever is
before the district court demonstrates that the standard for
entry of summary judgment, as set forth in Rule 56(c), is
satisfied." Id. at 323.

If the moving party meets its initial responsibility, the
burden then shifts to the opposing party to establish that a
genuine issue as to any material fact actually does exist.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 (1986). In attempting to establish the existence of this
factual dispute, the opposing party may not rely upon the denials
of its pleadings, but is required to tender evidence of specific
facts in the form of affidavits or admissible discovery material
in support of its contention that the dispute exists. Rule 56(e);
Matsushita, 475 U.S. at 586 n.11. The opposing party must
demonstrate that the fact in contention is material, i.e., a fact
that might affect the outcome of the suit under the governing
law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,

i.e., the evidence is such that a reasonable jury could return a
verdict for the nonmoving party, Wool v. Tandem Computers, Inc.,
818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual
dispute, the opposing party need not establish a material issue
of fact conclusively in its favor. It is sufficient that "the
claimed factual dispute be shown to require a jury or judge to
resolve the parties' differing versions of the truth at trial."
T. W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary
judgment is to 'pierce the pleadings and to assess the proof in
order to see whether there is a genuine need for trial.'"
Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)
advisory committee's note on 1963 amendments). The evidence of
the opposing party is to be believed, Anderson, 477 U.S. at 255,
and all reasonable inferences that may be drawn from the facts
placed before the court must be drawn in favor of the opposing
party, Matsushita, 475 U.S. at 587 (citing United States v.
Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)).
Nevertheless, it is the opposing party's obligation to produce a
factual predicate from which an inference may be drawn. Richards
v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal.
1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Although the
Court must not weigh the evidence, the Court must draw reasonable
inferences; evidence that is too insubstantial or speculative may
be insufficient to establish the existence of a genuine issue of
material fact. Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250,
1255 (9th Cir. 1982); Dept. of Commerce v. U.S. House of Rep., 525
U.S. 316, 334 (1999). To demonstrate a genuine issue, the

opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. <u>Anderson</u>, 477 U.S. at 251-52. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. <u>Id.</u> at 587.

The showings must consist of admissible evidence, <u>Hollingsworth Solderless Terminal Co. v. Turley</u>, 622 F.2d 1324, 1335 n.9 (9th Cir. 1980), or pleadings, depositions, answers to interrogatories, admissions, and affidavits or declarations, Fed. R. Civ. P. 56(c). Affidavits shall be based on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Fed. R. Civ. P. 56(e). Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. <u>Id</u>. Declarations pursuant to 28 U.S.C. § 1746 may be used with the same force and effect as affidavits. <u>Pollock v. Pollock</u>, 154 F.3d 601, 611, n.20 (6th Cir. 1998). Personal knowledge may be inferred from declarations themselves, such as from facts concerning a declarant's position and participation, <u>Barthelemy v. Air Line Pilots Ass'n</u>, 897 F.2d 999, 1018 (9th Cir. 1990); however, a court cannot draw an inference about facts not specifically put in the record by a party, and a court will not assume that general averments embrace specific facts needed to sustain a complaint, <u>Lujan v. National Wildlife Federation</u>, 497

U.S. 871, 887 (1990). An admission in a pleading, including a defendant's failure to deny an allegation in a complaint, constitutes an admission. Fed. R. Civ. P. 8(d); Lockwood v Wolf. Corp., 629 F.2d 603, 611 (9th Cir. 1980). Unauthenticated documents cannot be considered on a motion for summary judgment. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1990). Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

The Court is not obligated to consider matters that are in the record but are not specifically brought to its attention; the parties must designate and refer to specific triable facts. Even in the absence of a local rule, for evidence to be considered, the party seeking to rely on it must specify the fact by indicating what the evidence is or says and must indicate where it is located in the file. Although the Court has discretion in appropriate circumstances to consider other material, it has no duty to search the record for evidence establishing a material fact. Carmen v. San Francisco United School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001).

A party moving for summary judgment is entitled to the benefit of any relevant presumptions that support the motion provided that the facts giving rise to the presumption are undisputed. Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1254 (9th Cir. 1982).

III. Causation

Defendants move for summary judgment on the ground that

10

1  Plaintiffs lack evidence sufficient to support a jury finding in
2  their favor on the necessary element of causation for all claims
3  alleged by Plaintiff.

4          A. <u>Governing Law</u>

5      State law generally supplies the rules of decision in
6  federal diversity cases. 28 U.S.C. § 1652; <u>Erie R. Co. v.</u>
7  <u>Tompkins</u>, 304 U.S. 64, 78 (1938).

8      Defendant Home Depot cites both California and federal law
9  concerning the admissibility of expert opinions. (Mot. pp. 9-10.)
10 Defendant argues that the competency of a witness to testify is
11 governed by California law, applying the state law to questions
12 of the requisite professional or technical qualifications,
13 adequacy of factual basis, degree of probability, and sufficiency
14 of reasoning or explanation. (Mot. pp. 8-9.)

15     Fed. R. Evid. 601 provides that every person is competent to
16 be a witness except as otherwise provided in the rules; however,
17 in civil actions, with respect to an element of a claim or
18 defense as to which state law supplies the rule of decision, the
19 competency of a witness shall be determined in accordance with
20 state law. It has been held that pursuant to Rule 601, California
21 law governs the analysis of the sufficiency of the basis of, and
22 thus the admissibility of, expert opinions on the standard of
23 care. <u>Jerden v. Amstutz</u>, 430 F.3d 1231, 1234-35 (9th Cir. 2005).
24 Pursuant to Rule 601, state law has been applied to state-law
25 governed damages issues relating to claims for negligence brought
26 under the Federal Tort Claims Act, which are governed by the
27 substantive law of the states, and specifically to issues
28 concerning the adequacy of an expert's qualifications to testify

11

1  regarding the amount of future damages. <u>Trevino v. United States</u>,

2  804 F.2d 1512, 1516 (9th Cir. 1986) (considering the

3  qualifications of an expert witness to be matters relating to the

4  competence of the expert witness to testify, and concluding

5  pursuant to state law that the witness's absence of experience in

6  treating children with cerebral palsy or mentally retarded

7  children, or her failure to have evaluated developmentally

8  disabled children, went to the weight of her testimony, and not

9  her ability to testify). In diversity actions, it has been held

10 that the competence of a witness, including the competence of an

11 allegedly expert witness to testify as to proper installation of

12 a fireplace unit in light of her limited experience, is

13 determined by state law, which supplies the rule of decision

14 pursuant to Red. R. Evid. 601. <u>Higgenbottom v. Noreen</u>, 586 F.2d

15 719, 722 (9th Cir. 1978). <u>See</u> <u>also</u>, <u>Wright v. United States</u>, 2008

16 WL 820557 (D. Ariz. 2008); <u>Faron v. St. Joseph Hospital</u>, 2008 WL

17 4820796 (N.D.Cal. 2008).

18     The Court thus determines that issues raised by the parties

19 concerning the competence of the experts' opinions are governed

20 by California law.

21          B. <u>California Law of Causation</u>

22     Causation of harm is an element in negligence, strict

23 liability, and breach of warranty that must be proved by a

24 preponderance of evidence.

25     To prove a claim of negligence, the plaintiff must prove 1)

26 a legal duty to use due care, 2) a breach of that duty, and 3)

27 that the breach is the proximate or legal cause of the injury.

28 <u>Artiglio v. Corning, Inc.</u>, 18 Cal.4th 604, 613-14 (1998). A

1  plaintiff meets the causation requirement by showing that the
2  defendant's breach of its duty to exercise ordinary care was a
3  substantial factor in bringing about the plaintiff's harm, and
4  there is no rule of law relieving the defendant of liability. The
5  question of causation is normally a question of fact for the jury
6  unless the facts as to causation are undisputed. Ortega v. Kmart
7  Corp., 26 Cal.4th 1200, 1205 (2001). The first element of legal
8  cause is cause in fact, with respect to which the plaintiff must
9  show that the defendant's negligence contributed in some way to
10 the plaintiff's injury so that but for the defendant's
11 negligence, the injury would not have been sustained. Mitchell v.
12 Gonzales, 54 Cal.3d 1041, 1049 (1991). The plaintiff must
13 introduce evidence which affords a reasonable basis for the
14 conclusion that it is more likely than not that the conduct of
15 the defendant was a cause in fact of the result; a mere
16 possibility of such causation is not enough, and when the matter
17 remains one of pure speculation or conjecture, or the
18 probabilities are at best evenly balanced, it becomes the duty of
19 the court to direct a verdict for the defendant. Ortega v. Kmart
20 Corp., 26 Cal.4th at 1205-06. Where there are concurrent
21 independent causes, a defendant's conduct is a cause of an event
22 where it is a material element and a substantial factor in
23 bringing about the event. Mitchell v. Gonzales, 54 Cal.3d at
24 1049. A substantial factor in causing harm is a factor that a
25 reasonable person would consider to have contributed to the harm.
26 It must be more than a remote or trivial factor, but it does not
27 have to be the only cause of the harm. CACI, No. 430 (2007).
28      In strict liability, the general rule is that one engaged in

the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect. Rest.3d, Torts: Products Liability § 1 (2008). It must be proved that the item was manufactured by a defendant, the item was defective in manufacture or design, the defect existed when the item left the possession of the manufacturer, and the defect was the cause of an injury occurring during use that was reasonably foreseeable to the defendant. <u>Sindell v. Abbott Laboratories</u>, 26 Cal.3d 588, 597-98 (1980). Generally, a plaintiff must show that his or her injuries were caused by the act of the defendant or by an instrumentality under the defendant's control. <u>Sindell</u>, 26 Cal.3d at 597-98. To prove causation in fact in the context of products liability actions, the plaintiff must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury. <u>Rutherford v. Owens-Illinois, Inc.</u>, 16 Cal.4th 953, 968-69 (1997).

The essential elements of a warranty cause of action are a sale of goods; the defendant was the seller and plaintiff a buyer; defendant expressly or impliedly warranted the goods sold; there was a breach of warranty; the breach of warranty caused the plaintiff to suffer injury, damage, loss, or harm; and the plaintiff gave defendant timely notice of the breach of warranty. <u>Scott v. Metabolife International, Inc.</u>, 115 Cal.App.4th 404, 415-16 (2004) (quoting BAJI No. 940).

C. <u>Analysis of the Moving Party's Showing</u>

Defendants, whose motions are virtually identical in all significant respects, assert the inability of Plaintiff to prove

14

1  causation, a matter that is the Plaintiff's burden to prove.

2  Thus, Defendants must show that Plaintiffs cannot meet their

3  burden of proof at trial by establishing that there is no genuine

4  issue of material fact as to causation. Defendants must meet the

5  initial burden of producing evidence or showing an absence of

6  evidence as well as the ultimate burden of persuasion. <u>Nissan</u>

7  <u>Fire Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir.

8  2000). In order to carry its burden of production, Defendants

9  must either produce evidence negating an essential element of

10 Plaintiffs' claims or show that Plaintiffs do not have enough

11 evidence of an essential element to carry their ultimate burden

12 of persuasion at trial. <u>Id.</u> In order to carry its ultimate burden

13 of persuasion on the motion, the moving party must persuade the

14 court that there is no genuine issue of material fact. <u>Id.</u>

15     The evidence submitted by Defendants is what purports to be

16 the report of Rommie Jones, an investigator for the California

17 Department of Forestry and Fire Protection (Cal Fire).

18     Plaintiffs object to the report on the grounds of lack of

19 foundation, and specifically, a lack of authentication; lack of

20 proper foundation of qualification as an expert; and hearsay in

21 violation of Fed. Rule Evid., Rule 802.

22              1. <u>Authentication</u>

23     Fed. R. Evid. 901 provides:

24     (a) The requirement of authentication or identification as a
    condition precedent to admissibility is satisfied by evidence
25  sufficient to support a finding that the matter in question is
    what is proponent claims.
26
    Evidence cannot have a tendency to make the existence of a
27
    disputed fact more or less likely if the evidence is not that
28

                              15

1  which its proponent claims. <u>United States v. Branch</u>, 970 F.2d

2  1368, 1370 (4th Cir. 1992). Upon objection, authentication or

3  identification is a condition precedent to admissibility

4  determined pursuant to Fed. R. Evid. 104(b), <u>Ricketts v. City of</u>

5  <u>Hartford</u>, 74 F.3d 1397, 1409 (2nd Cir. 1996); the Court makes a

6  preliminary determination as to whether there is sufficient

7  evidence to sustain a jury finding of authenticity; ultimate

8  resolution of whether evidence is authentic calls for a factual

9  determination by the trier of fact. <u>United States v. Branch</u>, 970

10 F.2d at 1370. Authentication requirements are satisfied by

11 evidence sufficient to support a finding that the matter in

12 question is what its proponent claims, Fed. R. Evid. 901(a). It

13 is sufficient if there is enough support in the record to warrant

14 a reasonable person in determining that the evidence is what it

15 purports to be; thereafter, the question of weight to be given to

16 the evidence is left to the finder of fact. <u>United States v.</u>

17 <u>Holmquist</u>, 36 F.3d 154, 167 (1st Cir. 1994).

18     It has been held that in connection with a motion for

19 summary judgment where exhibits are attached to an affidavit,

20 they are governed by Fed. R. Civ. P. 56(e), and the affiant must

21 have personal knowledge to authenticate the document; if the

22 document is merely attached to an exhibit list, and not to an

23 affidavit, other basis for authentication may be considered

24 (i.e., by the methods in Fed. R. Evid. 901(b)). <u>Orr v. Bank of</u>

25 <u>America, NT & SA</u>, 285 F.3d 764, 777-78 (9th Cir. 2002). Further, a

26 writing is not authenticated simply by attaching it to an

27 affidavit and stating it is a true and correct copy. The

28 foundation is laid for receiving a document in evidence by the

1  testimony of a witness with personal knowledge of the facts who

2  attests to the identity and due execution of the document and,

3  where appropriate, its delivery. United States v. Dibble, 429

4  F.2d 598, 602 (9th Cir. 1970).

5      However, in a summary judgment motion proceeding, documents

6  may be authenticated not only through personal knowledge (i.e.,

7  by one who wrote the document, signed it, used it, saw others do

8  so, or is familiar with the signature), but also by any manner

9  permitted by Fed. R. Evid. 901(b) or 902. Orr v. Bank of America,

10 NT & SA, 285 F.3d 764, 774 n. 8 (9th Cir. 2002).

11     It is also possible to authenticate evidence by the act of

12 production in response to a subpoena. Unites States v. Lawrence,

13 934 F.2d 868, 871 (7th Cir. 1991) (corporate officer's voluntary

14 production in response to subpoena held to be sufficient to

15 authenticate the documents).

16     Here, attorney Tom Prountzos declares that attached to his

17 declaration is a true and correct copy of the Cal Fire

18 Investigation Report prepared by Rommie Jones. (Decl. ¶ 3.)

19     Although this alone is not sufficient to authenticate the

20 document, Defendant Home Depot submitted a full, certified copy

21 of the transcript of the deposition of Rommie Jones, who

22 testified that he had personally maintained the file of his

23 investigation of the fire (Dep. Jones, pp. 12), and whose report

24 and photographs were attached as Exhibit C to the deposition

25 transcript[3] (id. pp. 12-13). Although the document was not

26 authenticated in the straightforward, complete way that is

27

28      [3] Although the transcript of the deposition of Plaintiff Vernon Holmes has exhibits attached, it does not
   appear that any exhibits are attached to the transcript of Jones's deposition.

1  customary for depositions, the Court concludes that considering
2  all the circumstances, including Jones's extensive testimony
3  regarding his investigation and reporting, there is evidence
4  warranting a reasonable person in believing that the report is
5  the report he authored.

## 2. Qualifications of Jones as an Expert

7      Plaintiffs argue that there is lack of a proper foundation
8  in that there is insufficient indicating of Jones's
9  qualifications as an expert, or of his experience, education, or
10 training in the area of determining the case and origin of a
11 vehicle fire.

12     With some similarity with Fed. R. Evid. 702, Cal. Evid. Code
13 § 720(a) provides that any person who has the special knowledge,
14 skill, experience, training, or education necessary to become an
15 expert on the subject to which his testimony relates may be
16 qualified to testify as an expert. Whether a particular witness
17 has the qualifications necessary to give an expert opinion on a
18 specific topic may be shown by any otherwise admissible evidence,
19 including his own testimony, and it is an issue primarily left to
20 the trial court's broad discretion. Id.; Miller v. Los Angeles
21 County Flood Control Dist., 8 Cal.3d 689, 701 (1973). Courts tend
22 to admit expert testimony where the question is close. Brown v.
23 Colm, 11 Cal.3d 639, 645-46 (1974).

24     Here, Jones testified that he was a fire investigator for
25 the California Department of Forestry and Fire Protection for
26 seven years, and before that he was a fire captain at a fire
27 station for six years with responsibilities to investigate fires
28 to which he responded. (Id. pp. 15-18.) Before that he was a fire

1  fighter for seven years. (Id. at 20.) He had three additional

2  years of firefighting and rescue with a little investigatory

3  responsibility. (Id. p. 21.) He had studied fire science; had

4  taken FI 210 regarding wild land or vegetation fires from the

5  California conference of arson investigators; had numerous

6  certificates from shorter workshops, such as Fire Investigator 2

7  from the state fire marshal's office for structural fires; had

8  taken other classes from the California arson investigators,

9  including multi-day workshops in ignitions sources, burn

10  patterns, good investigators, ethics, vehicle fires, electrical

11  fires, and fires caused by power lines, all accompanied by

12  certificates. (Id. at 24-29.) He also had a stack of certificates

13  from classes taken from Cal Fire, and he had once taught Fire

14  Investigation 1-A, including ignition sources and burn patterns.

15  (Id. at pp. 31-33.)

16      The Court concludes that Jones's experience, training, and

17  education were sufficient to qualify him as an expert with

18  respect to the source of the fire at issue in this case; any

19  deficiency goes to the weight, and not the admissibility, of his

20  expert opinion.

21      The opinion of Jones was to the effect that he was unable to

22  determine if a spark from the muffler or the blade striking a

23  rock caused the fire. (Decl. of Prountzos, Ex. 2 p. 2.) He stated

24  that there were no other ignition sources in the area; Jones

25  ruled out Alice Holmes, electrical power lines, lightning, and

26  other persons or children. Plaintiff Vernon Holmes was in the

27  vicinity of the fire and was riding the lawnmower. Jones opined

28  that in his opinion, the fire started as a result of carbon

1  particles coming out of the muffler, due to the absence of a
2  spark arrester, or the blade of the mower striking a rock and
3  creating a spark in the dry grass. (Id. p. 3.)

4       Jones's testimony was also that there were two possible
5  causes, a spark unchecked by a spark arrester, or a spark caused
6  by the blade's striking a rock. The premises were covered with
7  rocks and debris; the mower was so burned that Jones could not
8  determine the path of the mower in order to locate a rock in its
9  path; he could have missed a rock. Although there was some
10 testimony to the effect that it was more likely than not that it
11 was the absence of a spark arrester, it is not clear that he
12 meant that it was probably that defect instead of hitting a rock
13 that was the cause. (Dep., Ex. 5, pp. 85-87, 130, 141-43, 146,
14 162-63, 194-95, 205, 222.) He did testify that he was leaning to
15 the spark arrester idea but he could not completely rule out the
16 possibility that one potential cause was the blade's striking a
17 rock; he could not totally eliminate both of the two causes. (Id.
18 at 163, 172, 194-95.) His method was to rule out sources. He
19 searched about a forty-foot area on the path he thought the mower
20 had followed, and rocks were found there. The blades looked old
21 and discolored from the fire, but they were not bent; he could
22 not tell the condition of the blades before the fire, and he did
23 not see evidence of a blade's having been damaged by striking
24 something or find any object that was hit by a blade. It was
25 possible that a dent or shiny area caused by a rock's hitting the
26 blade could be destroyed due to burns. (Id. at pp. 84-87, 142-43,
27 195, 205, 222.)

28      It is necessary that an opinion as to causation be certain

1  to the extent that it expresses a reasonable probability. A

2  possible cause becomes probable when, in the absence of other

3  reasonable causal explanations, it becomes more likely than not

4  that the injury was a result of its action. Saelzler v. Advanced

5  Group 400, 25 Cal.4th 763, 775-76 (2001) (where the theory of

6  liability was that inadequate locking of gates and security

7  patrols caused the harm suffered from the criminal act of an

8  unknown third party, but where there was no evidence that the

9  assailant was not authorized to be on the premises, the absence

10  of a connection, in the form of non-speculative evidence, between

11  the absence of security measures and the injury suffered by the

12  plaintiff on the defendant's property rendered the plaintiff's

13  proof of causation insufficient; the absence of sufficiently

14  strong evidence that the defect contributed to the result

15  resulted in an inability to create a triable issue of fact

16  because it set forth the mere possibility that the defect in

17  question contributed to the result, and it failed to establish a

18  reasonably probable causal connection (i.e., that it was more

19  probable than not that, but for the landlord's negligence, the

20  assault would not have occurred)). Equally balanced causal

21  probabilities require judgment for the defendant. Id. at 25

22  Cal.4th at 775-76.

23      Here, if, as Defendants allege, Jones were the only person

24  to investigate the fire and render an opinion, then it would be

25  concluded that his opinion is insufficient to raise an issue of

26  fact as to causation because it does not constitute an opinion

27  that it was reasonably probable that a defect in the

28  mower/failure of duty reasonable care/breach of warranty resulted

1   in injury to the plaintiffs, or that but for the

2   defect/failure/breach, the injury would not have occurred.

3       However, Plaintiffs dispute that the opinion of Jones is the

4   sole evidence pertinent to causation; indeed, they contend that

5   their own retained expert's opinion is sufficient. Thus, they

6   contend that Defendants have not negated an element of

7   Plaintiffs' case or established that Plaintiffs cannot prove a

8   necessary element of their case.

9           D. Plaintiffs' Opposition

10      Plaintiffs contend that their retained expert, Alex Wong,

11  provides an opinion that suffices to raise an issue of fact as to

12  causation.

13      Defendants argue that Plaintiffs have not created a triable

14  issue of fact by submitting Wong's declaration. Defendants

15  contend that the opinion is conclusional because it is

16  unsupported by a factual basis and is unaccompanied by a reasoned

17  explanation of how the factors on which it is based contributed

18  to the injury. Defendants contend that it does not rise to the

19  level of an opinion that conduct was more likely than not the

20  cause of an injury, or that it is more probable than not that in

21  the absence of a defect or breach, the harm would not have

22  occurred.

23      Specifically, Defendants argue that there is no explanation

24  why Wong believes that the source of the alleged fuel leak was

25  the plastic fuel fitting elbow as opposed to some other part, why

26  the alleged leak was more likely due to negligent design as

27  opposed to misuse of the product (or some other cause unrelated

28  to the defendants), or why the plastic part is any less durable

22

1  than the metal part.

2          1. Wong's Opinions

3      Wong's declaration is under penalty of perjury. (Decl. at p.
4  4.)

5      Wong details his qualifications, including employment for
6  eleven years in the fuel division of General Motors (GM), where
7  he investigated and determined the cause and origin of 200 to 300
8  fuel-related fire claims involving motor vehicles; and employment
9  for eight additional years, up to the present, as a vehicle fire
10  investigator by Lee S. Cole and Assoc., where he investigated and
11  determined the cause and origin of at least 200 vehicle fires.
12  Wong's curriculum vitae reflects a bachelor of science in
13  mechanical engineering and a master's of science in civil and
14  environmental engineering from the University of Cincinnati.
15  (Decl., Ex. A.) He is a registered professional engineer in
16  California, a certified master automotive technician, and a
17  member of several pertinent engineering societies; he has
18  experienced employment for almost a decade as a professor at
19  Sierra College in Rocklin as a full-time automotive technology
20  and engineering faculty member specializing in fuel injection,
21  carburetion, ignition, automotive electronics, and material
22  science. He worked as a field engineer in resolving technical
23  problems of vehicle owners, and as a manager of a corporation
24  that provided engine control diagnostics information to the
25  repair industry.

26      Wong declared that he has qualified and testified in six
27  cases in California Superior Court, most recently in 2007,
28  involving his opinions relating to the cause and origin of fuel-

related fires involving vehicles. (Decl. ¶ 5.)

With respect to the materials he relied upon in providing the opinions in this case, Wong stated that he had reviewed documents pertaining to the design and manufacturing of the product produced by Defendants MTD, Briggs and Stratton (B&S), Walbro, and Home Depot; design specifications from the defendants pertaining to the riding mower; owners' manuals produced by Defendants B&S and MTD; and a complaint filed in 1996 against Defendants B&S and MTD regarding the "same issues alleged in this Complaint," and a related history of litigation over a fuel-fitting elbow, carburetion, and a fuel delivery system which involved an alleged fuel leak that caused a fire. (Id. ¶ 7.)

Further, Wong had also inspected the scene where the fire occurred and the burned riding mower, including but not limited to the remains of the carburetion system. (Id. ¶ 8.) He had obtained and examined an exemplar carburetor that was on the mower at the time of the accident, which was manufactured by Defendant Walbro. (Id. ¶ 9.)

Wong had also reviewed the depositions of Plaintiffs and had attended the depositions the persons most knowledgeable of Defendant B&S, MTD, and Walbro with respect to the design and manufacturing of the specific product, including its component parts. (Id. ¶ 10.) He had also done other unspecified work and research that had assisted him in preparation of the opinions. (Id. ¶ 11.) He stated that his opinions were based on the evidence, deposition testimony, his experience, and his research. (Id. ¶ 13.)

Wong stated that Defendant Walbro manufactured the

carburetor; Defendant B&S manufactured the engine, a component
part with the carburetion system; and Defendant MTD manufactured
and distributed the product to retail outlets, which eventually
reached the consumer.

Wong declared that as a result of the defective design in
the fuel system and fuel fitting elbow, fuel leaked, and a fire
was caused as a result of the fuel leak; in his opinion, it was
more probable than not that the fire was fuel-based and started
as a result of the MTD riding mower that Plaintiff was driving at
the time of the incident. (Id. ¶ 7.) Wong specifically opined
that it was more probable than not that the mower leaked gasoline
fuel from the fuel delivery system, which resulted in a fire; it
was more probable than not that a design defected existed in the
Walbro LMT carburetor, fuel filter, and hose assembly installed
by B&S and the fuel delivery system regarding the riding mower
that was manufactured by Defendant MTD. Specifically, it was more
probable than not that the plastic fuel-fitting elbow, which was
fabricated of plastic instead of the metal that had been
originally used, was the cause and origin of the fire when it
failed, leaking fuel on to the engine block, which resulted in a
fuel-fed fire. Given the high operating temperatures generated by
the engine, as well as the exposure of the elbow to the elements
of the weather, the choice of plastic for the fuel fitting elbow
was a defective design choice that resulted in a foreseeable
fuel-fed fire from the fuel delivery system. Nothing in the
materials produced by the defendants had indicated that the user
was warned of this foreseeable fuel system failure mode. (Id. at

1  ¶ 14.)[4] Wong specifically stated that he had found no record or
2  evidence that required the Plaintiff or the ultimate consumer to
3  maintain, inspect, and correct fuel leaks on the fuel fitting
4  elbow or the fuel delivery system; it was more probable than not
5  that Defendants failed to warn the ultimate consumer of the
6  alleged defects in the carburetor system. (Id. ¶ 17.)

7      Wong stated that he learned from attending the depositions
8  of employees from MTD and Walbro that the fuel fitting elbow was
9  originally designed to be constructed of a metal material but was
10 changed in about 1991 to a plastic material to allow
11 interchangeable use with various designs of motor and fuel
12 delivery systems. Wong opined that the plastic fuel fitting elbow
13 was inferior to the metal fuel fitting elbow originally designed
14 for the part. This opinion was based in part on a Walbro
15 confidential report dated August 22, 2000, discussing issues of
16 the perception of the plastic fitting causing a fire. (Id. ¶ 16.)
17 The report, which is labeled a monthly status report updated to
18 July 2000, indicates that customer B&S had requested Walbro to
19 replace the current two-piece fitting with an all-metal fuel
20 fitting for about the same price or less than that of the current
21 two-piece plastic/metal fitting. The reason was the B&S wanted to
22 eliminate any potential perception of the plastic fitting's
23 causing a fire. The report indicated that Walbro had designed a
24 new fitting that would back fit the current fitting, to be
25 produced in metal for the same cost after testing for put out
26 force and twist force had been completed. It stated that Walbro

27  _____

28      [4] The Court notes that Defendants offered evidence that there was some warning of the need to perform maintenance or inspections on the fuel system generally.

26

was in the PCR process of updating existing and releasing new models for the introduction of the all-metal fitting, which would be in production in late November to allow use of the inventory of the prior, plastic/metal fitting. (Decl. of Wong, Ex. B.)

Wong opined that the fire was more probably than not not caused by a lawn mower blade striking a rock or from a cigarette because the burning and melting of the mower evinced a high temperature fuel fire, which will not result from a grass fire started from a rock striking the blade or a cigarette. (Id. at ¶ 15.)

2. Analysis

First, Wong states his qualifications, and the Court notes that there is no specific challenge to Wong's qualifications.

Next, it is clear that the matters relied on by Wong in reaching his conclusions, which included materials concerning the design and specifications of the mower, data produced in or as a result of discovery, such as deposition testimony, an exemplar apparatus, and inspection of the scene and of the apparatus itself, as well as his experience and research, all constitute the types of things appropriately relied on by an expert in forming an opinion. Cal. Evid. Code § 801(b) provides that an expert may base opinion testimony on any reliable material, including inadmissible material such as hearsay. Reliable material includes personal observations, tests, and examinations, People v. Wilson, 25 Cal.2d 341, 348 (1944) (also permitting consideration of a case history, including a patient's declarations regarding her own condition, in combination with observations); reports by other experts based on their personal

27

1  observations, tests, and examinations, <u>Christiansen v. Hollings</u>,

2  44 Cal.App.2d 332, 347 (1941), and reliable books, treatises, and

3  professional literature, <u>Mann v. Cracchhiolo</u>, 38 Cal.3d 18, 37

4  (1985); and the expert's own special knowledge, skill,

5  experience, training, and education, Cal. Evid. Code 801(b).

6      Defendants further contend that Wong relied on irrelevant

7  evidence in coming to his conclusion regarding causation.

8  Defendants argue that the complaint in the other lawsuit and the

9  confidential memorandum are not the type of evidence upon which

10 an engineer would base his opinions regarding the suitability of

11 a material because they lack any scientific value. As the

12 following analysis will reflect, the Court concludes that a

13 reasonable trier of fact could infer from them that the decision

14 to use plastic instead of metal was not based on safety

15 considerations, and that the decision to replace the plastic

16 parts with metal ones was based on a the concern of one who

17 supplied the products to others that a plastic part would be

18 perceived as a fire or safety risk. Although this is not

19 sufficiently reliable a basis for concluding that the plastic

20 part was defective, it does not appear that Wong's opinion of the

21 defective nature of the part was primarily based on the other

22 lawsuit or the confidential memorandum; rather, Wong relied on

23 the condition of the mower after the fire in postulating a fuel

24 fire, and he additionally referred to the two items of evidence

25 concerning the product's history in concluding that the plastic

26 part was inferior to the part as originally designed. (Decl. ¶

27 16.) A fair and complete reading of his opinion reveals that it

28 is reasonable to conclude that he also relied on other factors,

such as the temperature of the fuel during use, the exposure to environmental factors, the melting and burning of the mower, and the deduced temperature of the fire. The Court concludes that Wong's apparently limited reliance on the history of the design and manufacture of the fuel system did not render his reasoning inadequate or defective.

Defendant argues that the conclusion must be accompanied by a reasoned explanation of how the factors on which it was based contributed to the injury.

Here, Wong explained that he had reviewed the design and manufacturing specifications of the product, including those concerning the design and manufacture of the specific component part, as well as owner's manuals and an exemplar carburetor; and he had observed the burnt mower and the site. He considered the high operating temperatures generated by the engine, the exposure of the elbow to the elements of the weather, and the choice of material for the elbow. He explained that considering those circumstances, it was foreseeable that the fuel delivery system would fail at that point and result in a fuel-fed fire. Specifically, the plastic material was inferior to the metal. Data supporting that conclusion include the testimony of MTD and Walbro employees, data of which Defendants presumably are aware. Further, the opinion was supported by the confidential memo at Walbro reflecting the fact that the elbow component had originally been made of metal, was changed to a plastic material in order to achieve interchangeability (as distinct from capacity or function relating to fuel transport), and was to be changed back again at the behest of a customer who wanted the plastic

1  fitting replaced to eliminate a perception that a plastic part
2  caused a fire. The confidential report thus revealed that the
3  change was initially made for a reason unrelated to fuel safety,
4  but the change back was being accomplished in order to alleviate
5  consumers' concerns about fuel safety and fuel safety history.
6  Further, it demonstrated that at least one significant customer
7  was sufficiently concerned about the appearance of an unsafe
8  fuel-delivery system as a factor in starting fires to initiate a
9  change in the specifications. At this point the Court must
10 construe the moving parties' evidence narrowly and must indulge
11 all favorable, rational inferences in favor of the party
12 resisting summary judgment. The evidence noted by Wong tended to
13 show that the choice of materials reflected an inadequate
14 consideration of the importance of safety in the fuel delivery
15 system.

16     Further, Wong explained that in his opinion, the fire was a
17 fuel-based fire that probably started due to the operation of the
18 mower, failure of the elbow, and leaking of fuel. Data supporting
19 the conclusion included the high temperature of the fire and the
20 burning and melting of the mower that was observed by Wong. Wong
21 specifically addressed other possible causes of the fire; he
22 opined that the probable cause of the fire was not the striking
23 of a rock or a cigarette. He explained that this was because of
24 the condition of the mower, and specifically, the burning and
25 melting of it. This conclusion was made in light of Wong's
26 knowledge of the manufacturing and design specifications of the
27 plastic material as well as his observations of the burnt mower
28 and his knowledge and experience regarding fuel fires and

1  materials.

2      It is established that an opinion cannot rest upon
3  conjecture; an expert may not base a conclusion upon assumptions
4  which are not supported by the record, upon matters which are not
5  reasonably relied upon by other experts, or upon factors which
6  are speculative, remote, or conjectural. In re Lockheed
7  Litigation Cases, 115 Cal.App.4th 558, 563 (2004) (reliance upon
8  an epidemiological study as a basis for an opinion regarding the
9  causation of cancer found to be unreasonable because the study in
10 question involved persons exposed to more than 130 different
11 chemicals, and thus it did not indicate whether any particular
12 compound or compounds, including just the five substances
13 involved in the base before the court, contributed to an
14 increased risk of cancer; it was speculative and conjectural as
15 to which of the many substances to which the study subjects were
16 exposed contributed to the greater incidence of cancer). Cal.
17 Evid. Code § 801(b) requires the Court to determine whether the
18 matter relied upon is of a type that an expert reasonably can
19 rely on in forming an opinion upon the subject to which the
20 testimony of the expert relates. The matter relied on must
21 provide a reasonable basis for the particular opinion offered.
22 Id. at 564-65

23      However, it is likewise established that an expert's opinion
24 may be formed by the process of eliminating other causes, and the
25 expert's own experience and knowledge must not be irrationally
26 disregarded. Schreidel v. American Honda Motor Co., 34
27 Cal.App.4th 1242, 1253 (1995) (evidence of a defective clutch was
28 provided by a mechanic's driving of a car and using the clutch

system, and the mechanic's conclusion that the clutch system was defective did not have to pinpoint the exact mechanical detail within the slave cylinder of the clutch system that was responsible in order to prove the case). When an expert bases his opinion identifying a causative force by a process of eliminating other causes, the strength of the assumptions generally affects the weight and not the admissibility of the opinion. Id. at 1253. See also, People v. Sundlee, 70 Cal.App.3d 477, 484- (1977)(the opinion of an arson expert that a fire had been started by use of an accelerant and a sophisticated time device was not speculative because even though no remains of a time-delay device were found, the expert could rely on evidence of the chronological development of the fire, the delay between the departure of a person from the site and the start of the fire, and the location of the site of ignition in the center of an unwired shed, in light of his own experience and knowledge, in identifying a causative force by a process of eliminating other causes; the strength of his assumptions affected the weight rather than the admissibility of his opinion).

The cases relied on by Defendants are not apposite. In re Lockheed Litigation Cases, 115 Cal.App.4th 558, 563 (2004) was different because there the sole evidence relied upon by the plaintiff's expert was a study that did not reasonably tend to show that the few chemicals involved in the case caused cancer; thus, there was a complete lack of evidentiary support for the opinion. Likewise, Jennings v. Palomar Pomerado Health Systems, Inc., 114 Cal.App.4th 1108, 1117 (2003) involved a doctor's opinion that the cause of an infection was the use of and failure

to retrieve a contaminated retractor in surgery; the opinion was held to be speculative because although there was no evidence of any other causative factor, the expert admitted that patients do not always develop infections from foreign bodies that are not removed, infections develop regularly even where no foreign body is left inside, and the same infection could have been caused by other contaminants seeding the tissue during the surgical procedure or by a postoperative infection caused by skin bacteria infecting the surgical incision. Thus, it was clear that there were many potential causes, and no reason was given for eliminating any of them or selecting the specific cause. <u>Andrews v. Foster Wheeler LLC</u>, 138 Cal.App.4th 96, 108 (2006) was a products liability case in which the plaintiff testified at deposition that he had no knowledge himself that he had been exposed to one of the <u>defendant's</u> asbestos-containing products, although the Plaintiff could remember having seen, and thus having been exposed to, asbestos-containing items at various employment sites. Again, this was a case where despite complete discovery, the Plaintiff was unable to raise an issue of material fact by supplying any specific facts warranting an inference of exposure to the specific product; the plaintiff presented evidence warranting an inference that asbestos was present at a work site sixteen years before the plaintiff's presence, but there was no evidence that asbestos was actually present when Plaintiff was present or that any work had been done on specific condensers that had released asbestos into the air, and thus the plaintiff at most presented evidence that there was a possibility of exposure, and a possibility of causation is not sufficient to

1  raise an issue of material fact. <u>Andrews</u>, 138 Cal.App.4th at 108,

2  112-13. <u>Bushling v. Fremont Medical Center</u>, 117 Cal. App.4th 493

3  (2004) involved a claim for medical negligence by a patient who

4  suffered an unexplained shoulder injury during gallbladder

5  surgery. The defendant's evidence submitted in connection with a

6  motion for summary judgment was that the surgery and treatment of

7  the plaintiff were within the standard of care and in accordance

8  with established medical and surgical procedures. A defense

9  expert who had examined the plaintiff and had performed surgical

10 examination of the shoulder opined that the injury was

11 idiopathic, or from an unknown cause or no cause based on his

12 examination of Plaintiff; there was no indication that the

13 shoulder injury was caused by a blow or traction injury or other

14 trauma; and the nerve injury sustained by the plaintiff could

15 have occurred from a variety of reasons, including competent

16 medical treatment. <u>Id.</u> at pp. 507-08. It was held that opinions

17 from medical experts to the effect that the plaintiff more

18 probably than not suffered being dropped, being improperly

19 positioned, or stretching of the arm were speculative in the

20 absence of any evidence that Plaintiff was subjected to any of

21 these actions. Evidence that the plaintiff was turned over during

22 the surgery was rejected as erroneous, and the court

23 characterized the plaintiff's evidence as assuming the cause from

24 the injury, which was not reasonable. 117 Cal.App.4th at 510-11.

25      By contrast, here, some other causes identified as likely

26 have been eliminated, and the conclusion of a fuel fire is based

27 on specific evidence, including the melting and burning of the

28 mower itself, the deduced temperature of the fire, the condition

1  of the site, the testimony regarding the incident, the history of

2  a malfunctioning fuel elbow, and the expert's experience and

3  knowledge of materials and fuel fires. Further, the opinion is

4  that it was more likely than not, or that it was probable, that

5  the fuel elbow failed and caused a fuel fire. The fact that Wong

6  did not eliminate other parts as the cause of the fire does not

7  undermine the basis for drawing reasonable inferences from the

8  facts he cites. A reasonable finder of fact may reasonably infer

9  from Wong's explanation that the incapacity of the plastic part

10  to endure the use was based on the effect of heat and other

11  environmental stresses. The Court concludes that here, the

12  matters relied upon by Wong provided a reasonable basis for the

13  particular opinion offered.

14      The Court thus concludes that Plaintiffs' evidence is

15  sufficient to raise an issue of material fact concerning whether

16  or not Plaintiffs' injuries were caused by a defective fuel elbow

17  or fuel delivery system in the mower.

18      In light of the motions before the Court, the Court has

19  further concluded that it must devote some of its resources to

20  emphasize and, perhaps, even to clarify that the function of

21  summary judgment is to test for the presence of disputed issues

22  of material fact by looking for evidence sufficient to warrant a

23  reasonable trier of fact in returning a verdict for the nonmoving

24  party. The resolution of factual disputes is not an appropriate

25  function of the Court on a motion for summary judgment.

26  Declarations of the moving party are strictly construed, those of

27  the opposing party liberally construed, and all doubts as to

28  whether a summary judgment should be granted must be resolved in

1  favor of the opposing party. <u>Trop v. Sony Pictures Entertainment,</u>
2  <u>Inc.</u>, 129 Cal.App.4th 1133, 1143-44 (2005). The Court seeks to
3  find contradictions in the evidence or inferences reasonably
4  deducible from the evidence that raise a triable issue of
5  material fact. <u>Id.</u> Here, the Court is compelled by the nature of
6  the evidence submitted by Plaintiffs to rule in the Plaintiffs'
7  favor. This is clearly so under the applicable standards of
8  summary judgment. Further, California law does not necessarily
9  require that every detail that could be the subject of cross-
10  examination be addressed in an expert's declaration on a motion
11  for summary judgment; it is only necessary that, drawing
12  inferences liberally in favor of the party resisting the motion,
13  and considering the declaration as a whole, the declaration
14  permit a reasonable inference sufficient to establish the element
15  in question. <u>Tortorella v. Castro</u>, 140 Cal.App.4th 1, 10-11
16  (2006) (concluding that an expert's conclusion that a surgery and
17  diagnosis were below the standard of care and unnecessary
18  permitted an inference of deviation from the standard of care and
19  causation of harm to the patient because it was self-evident that
20  unnecessary surgery was injurious and caused harm to a patient,
21  even if executed flawlessly).

22      Defendants' motions for summary judgment ARE DENIED.

23  IT IS SO ORDERED.

24  **Dated:    November 20, 2008**             **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE

25

26

27

28