UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE HOLMES, et al., ) | 1:06-cv-01527-SMS |
| ) | |
| Plaintiffs, ) | ORDER GRANTING THE REQUEST OF |
| v. ) | DEFENDANT WALBRO ENGINE |
| ) | MANAGEMENT, LLC, FOR JUDICIAL |
| HOME DEPOT USA, INC., et al., ) | NOTICE (DOC. 214) |
| ) | |
| Defendants. ) | ORDER DENYING THE MOTION OF |
| ) | DEFENDANT DAPCO INDUSTRIES, INC., |
| ) | FOR DETERMINATION OF GOOD FAITH |
| | SETTLEMENT (DOC. 199) |

Plaintiffs are proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301.

Pending before the Court is the motion of Defendant DAPCO Industries, Inc. (DAPCO), for determination that a settlement entered into between DAPCO and Plaintiffs Alice and Vernon Holmes is in good faith pursuant to Cal. Civ. Proc. Code §§ 877 and 877.6. The motion was filed on June 2, 2009, along with a memorandum and declarations of Toby M. Magarian, David G. Howitt, Ph.D., and Warren R. Paboojian. On June 22, 2009, Defendant

1

Walbro filed opposition, along with a request for judicial notice, and the declaration of Mark B. Busick in opposition to the motion; courtesy copies of portions of two deposition transcripts were also received. On the same date, Defendant Briggs & Stratton (B&S) filed opposition to the motion, which included a memorandum and the declaration of Lawrence A. Margoles in opposition to the motion, with attachments. On June 26, 2009, Dapco filed a reply, which included a reply memorandum and the declaration of Toby M. Magarian. On July 2, 2009, the motion came on regularly for hearing in Department 7 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Toby Magarian appeared for the moving party, Defendant DAPCO, and Mark B. Busick appeared for Defendant Walbro; Lawrence A. Margoles appeared telephonically on behalf of Defendant Briggs and Stratton (B&S); Christopher Egan appeared telephonically on behalf of Defendant MTD; and there was no appearance on behalf of Plaintiff.[1] The Court had reviewed the papers submitted in connection with the motion. After argument, the matter was submitted to the Court.

I. Introduction

The action is based on general negligence, strict products liability, and breach of warranty; Plaintiffs seek to recover damages for personal injury and property damage that both Plaintiffs suffered when a lawnmower which Defendants manufactured and sold was used by Plaintiff Vernon Holmes in

---

[1] Former defendant Home Depot is no longer in the case because after discovery that it did not sell the mower in question, it was dismissed from the suit with a payment of $7,500.00. (Home Depot U.S.A., Inc.'s Memo. in Supp. of Mot. [Doc. 172]; Order granting Mot. for Det. of Good Faith Settlement, Doc. 195.)

2

August 2005, and resulted in a fire. The action was removed to this Court in September 2006.

## II. Request for Judicial Notice

The request of Defendant Walbro Engine Management, LLC, for judicial notice will be granted. The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd., 645 F.2d 699 (9th Cir. 1981); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th. Cir. 1980).

## III. Legal Standards

The second amended complaint (Doc. 86) followed removal based on diversity of citizenship and an amount in controversy exceeding $75,000 (Doc. 1, p. 2). State law generally supplies the rules of decision in federal diversity cases. 28 U.S.C. § 1652; Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Cal. Civ. Proc. Code § 877 provides that where a release is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it discharges other parties from liability only if its terms so provide; it shall reduce the claims against the others in the amount stipulated by the release or in the amount of the consideration paid for it, whichever is the greater; and it shall

discharge the party to whom it is given from all liability for any contribution to any other parties. Cal. Civ. Proc. Code § 877.6 provides for a party to bring a motion for determination that the settlement is in good faith. Section 877.6(a)(2) expressly requires that the application for determination of good faith settlement shall indicate the settling parties, and the basis, terms, and amount of the settlement. Section 877.6(b) provides that the issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing and any counter-affidavits filed in response, or the court may in its discretion receive other evidence at the hearing. A prima facie showing of the settlement is sufficient to shift the burden of proof: a brief background of the case and statement of the grounds of good faith, supported by a declaration, is sufficient where good faith is uncontested; however, if the good faith nature of a settlement is disputed, then section 877.6(d) provides that the party asserting the lack of good faith shall have the burden of proof on that issue, and the trial court must consider and weigh the Tech-Bilt factors. City of Grant Terrace v. Superior Court, 192 Cal.App.3d 1251, 12651 (1987).

    Section 877.6(c) provides that a determination by the Court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

    Section 877 and its substantive provisions govern this

4

federal action, although the procedural provisions of § 877.6 do not necessarily even if a settlement agreement provides that California law applies. Nevertheless, it is appropriate for a district court to consider and determine the good faith question. Federal Sav. and Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990). Further, in the absence of a conflict with federal procedures or other factors giving rise to federal concerns, state settlement procedures are to be applied by federal courts to state causes of action where they are outcome-determinative. Slaven v. BP America, Inc., 958 F.Supp. 1472, 1478 (C.D.Cal. 1997) (citing Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 536-37 (1958), and collecting other cases).

A finding of good faith under Cal. Civ. Proc. Code § 877 is a finding of fact for the trial court to be made pursuant to the factors stated in Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal.3d 488 (1985). Owen v. United States, 713 F.2d 1461, 1466 (9th Cir. 1983); Yanez v. United States, 989 F.2d 323, 328 (9th Cir. 1993).

Section 877 was derived from the Uniform Contribution among Tortfeasors Act of 1955. Federal Savings and Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9tyh Cir. 1990).

In Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal.3d 488, 499 (1985), the California Supreme Court stated that an appropriate definition of "good faith" "would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." However, it also stated that bad faith is

not necessarily "established by a showing that a settling defendant paid less than his theoretical proportionate or fair share." Id. (citation omitted). "Such a rule would unduly discourage settlements" because it would not take into account various unknown and speculative factors such as the amount of damages, probability of legal liability, the solvency of the defendant, and the risk of going through trial. Id.

The California Supreme Court stated:

> Rather, the intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.... (Citation omitted.) Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. "[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be." (Citation omitted.) The party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a "settlement made in good faith" within the terms of section 877.6.

Tech-Bilt, Inc., 38 Cal.3d at 499-500.

In determining whether a settlement bears a reasonable relationship to the settlor's proportionate share of liability, the Court must consider not only the settlor's potential liability to the plaintiff, but also its proportionate share of

6

culpability as among all parties alleged to be liable for the same injury. <u>TSI Seismic Tenant Space, Inc. v. Superior Court</u>, 149 Cal.App.4th 159, 166 (2007). Potential liability for indemnity to a nonsettling defendant is an important consideration for the trial court. <u>Id.</u>

The major policy goals of the statute are equitable sharing of costs among the parties at fault and encouragement of settlements. 38 Cal.3d at 494. Settlements which are so poorly related to the value of the case as to impose a potentially disproportionate cost on the defendant ultimately selected for suit may be considered unfair. <u>Id.</u> at 495. Individuals not participating in the settlement are barred from seeking contribution only if the settling parties acted in good faith with respect to them. The settling parties owe the non-settling defendants a legal duty to refrain from tortious or other wrongful conduct but otherwise may act to further their respective interests. <u>Id.</u> at 497-98.

The trial court's decision on good faith may be reversed only upon a showing of abuse of discretion. <u>Tech-Bilt, Inc.</u>, 38 Cal.3d at 502. The discretion is not unlimited, but should be exercised in view of the equitable goals of the statute, in conformity with the spirit of the law and in a manner that serves the interests of justice. <u>Long Beach Memorial Medical Center v. Superior Court</u>, 172 Cal.App.4th 865, 873 (2009).

IV. <u>Analysis</u>

The moving Defendant has presented the settlement and sufficient data to establish the settlement and the bases therefor.

As to Plaintiffs' total recovery and the settlor's proportionate liability, Plaintiffs' evidence of approximately $880,000 in medical bills and property damage, considered along with anticipated special damage claims, presents an exposure of over $2,000,000 in potential damages.

The moving Defendant asserts in effect that Plaintiffs' actual recovery might be much less and/or might be reduced by the comparative fault of Plaintiff; further, it is possible that the trier of fact will reject the opinion of Plaintiffs' expert, Alex Wong, as to origin and causation of the fire, and instead accept other experts' opinions concerning the cause of the fire and any defect in the fuel fitting elbow, resulting in Plaintiff's recovery of nothing at trial.

The parties informed the Court at hearing that at a deposition taken this past week, Wong opined that although the plastic was an appropriate material for the fitting, and although DAPCO did not negligently manufacture the fitting, it was an improper design choice to use the two-piece fitting on the mower in question in the location where it was installed because rotating the fitting in servicing would cause the ultimate failure of the piece. Failure to warn consumers the piece could fail if rotated was also a cause of damage. Further, the source of fuel leak which caused the fire was most likely either the DAPCO part or a hose, hoses, or a different fitting which was not manufactured by DAPCO.

At this point the opinion of Wong stands and presents a basis for liability on the part of the parties who manufactured the fuel-fitting elbow, the carburetor, the engine, and the

8

1  completed products and marketed them to consumers and users.
2       The Court recognizes that a settlor should pay less in
3  settlement than it would pay if found liable after trial.
4  However, even if there is a slight probability of liability, the
5  amount of the settlement is disproportionately low in view of the
6  facts presented to the Court.
7       The settling defendant manufactured the part; Walbro
8  installed the fuel fitting unit into the carburetor and sold the
9  carburetor to B&S; B&S installed the carburetor, fuel filter, and
10 hose assembly into the engine; and MTD manufactured and
11 distributed the final product to retail outlets.
12      It was for Walbro's and B&S's economy and/or convenience
13 that the part was made in plastic. Although there are some
14 uncertainties or issues for the trier of fact with respect to the
15 exact degree of Defendant DAPCO's participation in the design of
16 the plastic and brass fuel fitting elbow, there is evidence of
17 significant participation in the design process. Tupper, who was
18 deposed as a person most knowledgeable (PMK) of DAPCO, testified
19 that the plastic and brass fitting came from an existing DAPCO
20 fitting, it was designed to accommodate Walbro's application, and
21 the final design specifications would come from Walbro. Israelson
22 of Walbro testified that he believed that it was a DAPCO design,
23 Walbro had a design based on DAPCO's drawing, and Walbro did not
24 define the interface between the two parts (the metal casting and
25 the portion that would interface with the hose), but Walbro later
26 worked with DAPCO to modify it and improve the design of the
27 part. Walbro had to approve all design changes. Israelson also
28 testified that DAPCO had provided Walbro with testing of the part

9

concerning leaking.

It appears that Walbro and B&S determined that the material should be partially plastic and not only metal, but DAPCO participated in the design and production of a plastic product with knowledge that it would be part of the fuel system in a carburetor in an engine that would use flammable fuel. It does not appear that DAPCO would be in control of the final integration of the part in the carburetor or engine or of the ultimate warning given to consumers.

The doctrine of strict products liability imposes strict liability in tort on all of the participants in the chain of distribution of a defective product; further, a manufacturer cannot necessarily escape liability by tracing the defect to a component part supplied by another because strict liability is "strict," and thus it encompasses defects regardless of their source. Vandermark v. Ford Motor Co., 61 Cal.2d 256, 260-61 (1964). A manufacturer of a component part that is put into a product by another can be held strictly liable for damages caused by the product into which the component was put; the overriding policy considerations are the same in strict liability with respect to component manufacturers and suppliers on the one hand, and manufacturers and distributors of complete products on the other. Jiminez v.Superior Court, 29 Cal.4th 473 (2002). Under the doctrine of strict products liability, the liability of all defendants in the chain of distribution is joint and several such that each defendant can be held liable for all damages caused by a defective product reduced only by the Plaintiff's comparative fault. Bostick v. Flex Equipment Co., Inc. 147 Cal.App.4th 80,

88-89 (2007).

The present case does not appear to be one in which Defendant DAPCO is liable solely as a matter of law as a manufacturer of a component part with no control over the design process. Compare, Springmeyer v. Ford Motor Co., 60 Cal.App.4th 1541, 1550 (1998). Because of its apparently substantial participation in the design and manufacturing process, DAPCO appears to be significantly responsible when its conduct is considered in comparison with Walbro and B&S. The Court concludes that consideration of the legal theories and factual basis for DAPCO's liability results in a conclusion that there is a reasonable likelihood that DAPCO faces substantial liability.

Further, DAPCO faces significant liability for indemnity. It therefore would be inequitable to permit DAPCO to withdraw from the litigation with a payment of only $15,000 and to extinguish indemnity claims of other defendants that easily could amount to twenty or thirty times the settlement figure, or more. Compare, Gehl Brothers Manufacturing Company v. Superior Court, 183 Cal.App.3d 178 (1986); Long Beach Memorial Medical Center v. Superior Court, 172 Cal.App.4th 865 (2009). The Court finds that the settlement of Plaintiffs with DAPCO was grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.

The absence of an allocation of the settlement proceeds in the agreement does not appear to be particularly significant in light of the identity and status of the two Plaintiffs.

There do not appear to be any issues concerning the

settlor's financial condition; there is no evidence that the settling Defendant has limited financial means such that would justify a disproportionately low settlement amount.

As to collusion, there is no affirmative evidence of collusive interaction, and there are no other extraneous factors suggesting collusion. However, the desire to avoid indemnity liability provided a very strong strategic or tactical motive for settlement.

Considering all the pertinent factors, the Court finds that the non-settling Defendants have met their burden. The Court finds that the settlement was not in good faith. The settlement did not serve the goal of equitably allocating costs among multiple tortfeasors or of encouraging settlement among all interested parties.

V. Disposition

Accordingly, the request of Defendant WALBRO ENGINE MANAGEMENT, LLC, for judicial notice, IS GRANTED, and the motion of Defendant DAPCO Industries, Inc., for a determination that its settlement with Plaintiffs was in good faith, IS DENIED.

IT IS SO ORDERED.

**Dated:   July 8, 2009**              /s/ Sandra M. Snyder
                                  UNITED STATES MAGISTRATE JUDGE